IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAJANAE ANDERSON, on behalf of herself and others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>LIBERTY HEALTHCARE CORPORATION and SARGENT'S PERSONNEL AGENCY, INC.,<br>      Defendant. | CIVIL ACTION<br><br>NO. _____<br><br>CLASS/COLLECTIVE ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT – CLASS/COLLECTIVE ACTION

Tajanae Anderson ("Plaintiff") brings this lawsuit against Liberty Healthcare Corporation ("Liberty") and Sargent's Personnel Agency, Inc. ("Sargent's"), seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* Plaintiff's FLSA claim is asserted as a collective action under 29 U.S.C. § 216(b), while her PMWA claim is asserted as a class action under Federal Rule of Civil Procedure 23. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) (collective and class claims may proceed together in the same lawsuit).

## JURISDICTION AND VENUE

1. Jurisdiction over the FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. Jurisdiction over the PMWA claim is proper under 28 U.S.C. § 1367.

3. Venue in this Court is proper under 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff resides in Philadelphia, PA (Philadelphia County).

5. Liberty is a corporation headquartered in Bala Cynwyd, PA (Montgomery

County).

6. Sargent's is a corporation headquartered in Johnstown, PA (Cambria County).

7. Liberty and Sargent's are referred to collectively as "Defendants."

8. Plaintiff is an employee covered by the FLSA and PMWA.

9. Defendants are employers covered by the FLSA and PMWA.

**FACTS**

10. Pennsylvania's Adult Protective Services Act ("APS Act"), 35 P.S. §§ 10210.101, *et seq.*, generally requires the Pennsylvania Department of Human Services ("DHS") to ensure "the consistent and timely investigation of allegations of abuse, neglect, exploitation, or abandonment of adults with disabilities; the prevention of abuse, neglect, exploitation, or abandonment of adults with disabilities and, when necessary, the provision of services to adults with disabilities who are found to be victims of abuse." DHS Adult Protective Services Annual Report for Fiscal Year 2016-17 at p. 1.[1]

11. Since April 2015, DHS has contracted with Liberty to provide the adult protective services required by the APS Act. *See id.*

12. Pursuant to the applicable contract, "Liberty receives allegations of abuse, neglect, exploitation, or abandonment, that are referred by a statewide hotline operated and maintained by the Pennsylvania Department of Aging (PDA) through the Area Agencies on Aging (AAA)." *Id.*

13. In carrying out its contractual obligations to DHS, Liberty employs individuals in the position of Investigator/Case Worker. According to Liberty's standardized job description, a "typical workday in this role will involve traveling to residences, nursing homes and long-term care facilities throughout the region and conducting investigations of allegations of abuse,

---

[1] Available at https://www.dhs.pa.gov/about/Fraud-And-Abuse/Pages/Adult-Protective-Services.aspx (last viewed June 22, 2020).

2

neglect, abandonment and/or exploitation of adults who have disabilities."[2]

14.     The Investigator/Case Worker position does not require a master's degree, and, according to Liberty's job description, successful applicants can have bachelor's degrees in a wide variety of subject areas, including: "Field-based health or human services[;] Service Coordinator or Supports Coordinator[;] Law enforcement[;]Case management or protective services[; or] Intellectual and developmental disabilities or behavioral health professional."

15.     Liberty pays some of its Investigators/Case Workers through staffing agencies, one of which is Sargent's.

16.     Regardless of whether they are paid directly by Liberty or paid through a staffing agency, all Investigators/Case Workers working pursuant to Liberty's contract with DHS: (a) perform the "typical workday" activities described in paragraph 13 *supra*; (b) are purportedly paid a salary; (c) regularly work over 40 hours per week; and (d) do not receive any overtime pay for hours worked over 40 per week.

17.     From around June 2019 until around February 2020, Plaintiff worked for Liberty as an Investigator/Case Worker and was paid through Sargent's.

18.      Plaintiff generally performed the "typical workday" activities described in paragraph 13 *supra*.

19.     Plaintiff was paid a biweekly salary of around $1,615, which equates to an annual salary of around $42,000.

20.     Plaintiff, like other Investigators/Case Workers, regularly worked over 40 hours per week.  In fact, Plaintiff estimates that she often worked 50 or more hours.

21.     Plaintiff, like other Investigators/Case Workers, did not receive any overtime pay

---

[2]  Available at https://www.libertyhealthcare.com/careers/ (last viewed June 22, 2020).

3

for hours worked over 40 per week.

22. Plaintiff was given a Liberty email address (tajanae.anderson@libertyhealth.com) and held herself out as a Liberty employee.

23. In performing her work and preparing investigatory reports (many of which contained confidential law enforcement information), Plaintiff utilized the same computer programs/platforms and investigatory protocols utilized by Investigators/Case Managers paid directly by Liberty.  Upon information and belief, Sargent's management was not authorized to access much of the information gathered and reported by Plaintiff.

24. Plaintiff's investigations were assigned and overseen by Liberty.  Upon information and belief, Sargent's does not employ staff who are trained or qualified to oversee the investigatory work performed by Plaintiff.

25. Liberty set the work rules and expectations applicable to Plaintiff's employment.

26. Plaintiff's day-to-day work was directed almost entirely by Liberty.  In this regard, Plaintiff reported to Cory Haines, an APS Investigator Supervisor employed by Liberty.

27. Liberty had the authority to discipline Plaintiff and terminate her employment.  In fact, Mr. Haines and Liberty Regional Program Manager Jeff Paulinellie were directly involved in the circumstances that led to Plaintiff's February 21, 2020 resignation, and, in order to resign, Plaintiff was required to send an email (copy attached) directly to Mr. Paulinellie, who then forwarded the email to Liberty Statewide Program Director Kirk Golden.

## CLASS/COLLECTIVE ACTION ALLEGATIONS

28. Plaintiff brings her FLSA claim as a collective action pursuant to 29 U.S.C. §216(b) and brings her PMWA claim as a class action pursuant to Federal Rule of Civil Procedure 23.  She sues on behalf of all individuals who worked in Pennsylvania for Liberty

(either directly or through a third-party staffing agency such as Sargent's) as Investigators or Case Managers during any week within the past three years.

29. Plaintiff's FLSA claim should proceed as a collective action because she and other putative collective members, having worked pursuant to the common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

30. Class action treatment of Plaintiff's PMWA claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

31. The class, upon information and belief, includes over 70 individuals, all of whom are readily ascertainable based on Defendant's payroll records and are so numerous that joinder of all class members is impracticable.

32. Plaintiff is a class member, her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with the interests of other class members.

33. Plaintiff and her lawyers will fairly and adequately represent the class members and their interests.

34. Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Defendants' common compensation policies, as described herein. The legality of these policies will be determined through the application of generally applicable legal principles to common facts.

35. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and

efficient adjudication of this litigation.

## COUNT I
### (Alleging FLSA Violations)

36.  All previous paragraphs are incorporated as though fully set forth herein.

37.  The FLSA requires that employees receive overtime premium compensation "not less than one and one-half times" their regular pay rate for hours worked over 40 per week. *See* 29 U.S.C. § 207(a)(1).

38.  Defendants violated the FLSA by failing to pay Plaintiff and the FLSA collective overtime premium compensation for all hours worked over 40 per week.[3]

39.  In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions and, as such, willfully violated the FLSA.

## COUNT II
### (Alleging PMWA Violations)

40.  All previous paragraphs are incorporated as though fully set forth herein.

41.  The PMWA requires that employees receive overtime premium compensation "not less than one and one-half times" the employee's regular pay rate for hours worked over 40 per week. *See* 43 P.S. § 333.104(c).

42.  Defendants violated the PMWA by failing to pay Plaintiff and the Rule 23 class overtime premium compensation for all hours worked over 40 per week.[4]

---

[3] Liberty and Sargent's are jointly and severally liable as to Plaintiff and any other class members who were paid through Sargent's. Liberty is solely liable as to all other collective members.

[4] Liberty and Sargent's are jointly and severally liable as to Plaintiff and any other collective members who were paid through Sargent's. Liberty is solely liable as to all other collective members.

## JURY DEMAND

Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and other members of the class/collective, seeks the following relief:

A. Unpaid overtime wages and prejudgment interest;

B. Liquidated damages to the fullest extent permitted under the FLSA;

C. Litigation costs, expenses, and attorneys' fees; and

D. Such other and further relief as the Court deems just and proper.

Date: June 22, 2020                                   Respectfully,

/s/ Peter Winebrake
Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*Plaintiff's Counsel*

# Kirk Golden

| | |
|---|---|
| **From:** | Jeffrey Paulinellie |
| **Sent:** | Friday, February 21, 2020 9:22 AM |
| **To:** | Kirk Golden |
| **Subject:** | FW: Resigned |

**Jeff Paulinellie**
*APS Regional Program Manager-East*

M: (267) 418-6436
F: (484) 434-1584
jpaulinellie@libertyhealth.com

---

**From:** Tajanae Anderson <tajanae.anderson@LibertyHealth.com>
**Sent:** Friday, February 21, 2020 9:13 AM
**To:** Jeffrey Paulinellie <jpaulinellie@LibertyHealth.com>; Cory Haines <chaines@LibertyHealth.com>
**Subject:** Resigned

Hello,

I resign my position as a APSI effective immediately.

Thank you for the opportunity

Best wishes


Sent from my Verizon, Samsung Galaxy smartphone

1

Employer Exhibit2

## CONSENT TO BECOME PARTY PLAINTIFF

I hereby consent, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), to become a party plaintiff in the accompanying FLSA action. I understand that I will be bound by the judgment of the Court on all issues in this case.

DocuSigned by:
0D937A6ADB94494...

Signature

Tajanae Anderson

Print Name